OPINION OF THE COURT
John Copertino, J.
These are actions by creditors to set aside a conveyance of real property as fraudulent. Defendant Frances Goldstein moves for summary judgment based upon the death of her husband, the debtor.
The actions were joined for trial by a prior order of this court; the three plaintiffs were creditors of Charles Goldstein, deceased. Teresa Kozyra alleges a judgment against Mr. Gold-stein for. $49,666.02 for loans extended and never repaid. Dolores A. Scheele seeks recovery of two judgments she alleges she obtained against Mr. Goldstein in the amount of $137,457.50. The Bank of Long Island alleged a judgment against Mr. Goldstein for $13,703.30 in connection with a charter check credit account agreement, but has voluntarily discontinued its action. The remaining plaintiffs wish to enforce their judgments against the former marital residence.
As noted above, defendant Frances Goldstein is the widow of the debtor, who died on February 1, 1989. They had conveyed their interest in the subject property, which they had owned as tenants by the entirety, to Mrs. Goldstein alone on October 4, 1982.* Plaintiffs allege that the transfer was made without fair consideration and that as a result of this conveyance Charles Goldstein was rendered insolvent. They also claim that the sole purpose of the transfer was to avoid payment of his debts. Plaintiffs claim that for these reasons Charles Goldstein’s conveyance to his wife was fraudulent and should be set aside pursuant to article 10 of the Debtor and Creditor Law. Given the theory that Mr. Goldstein’s death has mooted these actions, the court will assume that the 1982 transfer was a violation of article 10.
It is the movant’s contention that she should be granted summary judgment because, "even if plaintifffs] had prevailed each claim against the realty was totally defeasible by virtue of Mr. Goldstein’s death”. In effect, Mrs. Goldstein argues that even assuming that the 1982 transfer is set aside as fraudu *27 lent, thereby returning the property to both debtor husband and wife as tenants by the entirety, the debtor husband’s death means that any judgment against him cannot be enforced against the realty in question because it became hers alone by operation of law. Mrs. Goldstein is correct.
The court first notes that there is no allegation that the initial 1968 purchase of the property was made in contemplation of defrauding creditors, or was in any other way wrongful. Defendants therefore held the property as rightful tenants by the entirety at the time of the 1982 conveyance. Unlike other forms of ownership, tenants by the entirety do not hold partial interests; each owns the whole, subject to the parallel right of his or her spouse. On the death of either spouse the fee vests in the other, not because there was a transfer of any part of the estate, but because the survivor is the representative of the single ownership (Matter of Dickie, 55 Misc 2d 976, citing Matter of Lyon, 233 NY 208).
Consequently, Mr. Goldstein’s death did not cause a transfer of his interest to his spouse. Rather, it simply left his wife’s entire interest — which she had enjoyed all along — as the sole remaining interest in the property. This is consistent with the fact that unlike a joint tenant with right of survivorship, one spouse who holds by the entirety may not alienate his interest without the consent of the other (Matter of Dickie, supra, citing Hiles v Fisher, 144 NY 306).
This difference between the two forms of ownership is central to actions brought under article 10 where the debtor has died. It is clear that where the original form of ownership was a joint tenancy with rights of survivorship, the surviving joint tenant may not rely on succession to the deceased’s half interest as a bar to enforcement, whether the subject property was personal or real (Matter of Granwell, 20 NY2d 91; Kashan v Kosoff 112 AD2d 350). This is because a transfer of interest takes place on death, and, if this renders the decedent’s estate insolvent, the transfer becomes fraudulent as to creditors (Matter of Dickie, supra). However, and as noted above, when the original form of ownership of real property was a tenancy by the entirety there is no transfer at all; the debtor’s interest simply drops away. For this reason, returning the property to status quo ante would still leave the real estate in the hands of Mrs. Goldstein alone, free of any liens, inasmuch as she is not the judgment debtor.
The court acknowledges that there is dicta in Kashan v *28 Kosoff (supra), which suggests that upon an appropriate showing creditors may indeed reach the former interest of a deceased tenant by the entirety. However, the Appellate Division there cited Matter of Dickie (supra) for such proposition, and a reading of Dickie does not support this view.
Kashan (supra) concerned real property held by a husband and wife not by the entirety but as joint tenants with rights of survivorship. The holding of that case permitted the deceased’s creditors to look to the property for enforcement even though the debtor’s wife had succeeded to full ownership upon her husband’s death. The Kashan court then made the statement that had the property been held by the entirety "plaintiff would not be entitled to recover in the absence of actual fraud” (Kashan v Kosoff, supra, 112 AD2d, at 352), implying that if actual fraud were demonstrated enforcement against property held by the entirety would be possible. However, this commentary may have been made because the initial purchase of the property by the Kosoffs was an issue in that case; the court had indicated that the act of taking the property itself (whether jointly or by the entirety) may have been in fraud of creditors. Therefore, setting aside the conveyance to husband and wife as tenants by the entirety (assuming that this had been the form of ownership employed) might have resulted in returning some interest in the property to the decedent’s estate, thus exposing such interest to enforcement. In the instant matter the initial 1968 purchase by the Gold-steins is not in issue, and therefore the dicta in Kashan may be interpreted as being limited to the facts of that case.
To the extent that the Kashan court may have signaled something more general concerning a creditor’s rights under article 10, this court respectfully disagrees. As noted above, in Matter of Dickie (supra), Surrogate Regan clearly distinguished the surviving joint tenant from the surviving tenant by the entirety, concluding that the rationale for permitting enforcement against property owned by the former could not be applied to the latter. He did not state or imply that the result might vary with the nature of the creditor’s proof. Accordingly, this court declines to follow the dicta found in the Kashan decision (supra).
Consequently, by reason of the death of Charles Goldstein, the real property held by Mrs. Goldstein as a tenant by the entirety is not subject to any claims, demands or judgments *29 possessed by the creditors of Charles Goldstein. Even assuming that the 1982 conveyance from the two tenants by the entirety to Mrs. Goldstein alone was fraudulent and could be set aside, the property may not now be the subject of enforcement. The motion is granted.

 Counsel for defendants notes that only Mr. Goldstein executed the deed, but for purposes of this motion the court will discount the absence of Mrs. Goldstein’s signature as a mere irregularity.